# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

BALLY'S LAS VEGAS MANAGER, LLC,

    Plaintiff

v.

LOCAL JOINT EXECUTIVE BOARD OF
LAS VEGAS and BARTENDERS UNION,
LOCAL NO. 165,

    Defendants

Case No.: 2:20-cv-00475-APG-DJA

**Order Confirming Arbitration Award and
Denying Plaintiff's Motion to Vacate**

[ECF Nos. 1, 17, 21]

Bally's Las Vegas Manager, LLC (Employer) petitions to vacate the arbitration award issued in an arbitration between the Employer and the Bartenders Union. The Local Joint Executive Board of Las Vegas and the Bartenders Union (collectively the Union) are parties to a collective bargaining agreement (CBA) with the Employer. The issue in the arbitration was the Union's request to modify the scheduling procedure that the Employer applied after a bartender lost shifts but retained 60% of his scheduled shifts. Section 9.03(a) of the CBA provides that regular and relief employees "shall be guaranteed pay" for shifts in a workweek if they "are scheduled and report for work at the beginning of their workweek." ECF No. 17-2 at 40. Section 9.03(c)(6), which the Employer and the arbitrator describe as a catchall provision, provides that the weekly guarantee does not apply "[w]here the Employer, Union and the employee have mutually agreed that the employee would be scheduled for and work less than the contractually provided for workweek and/or shift." *Id.* at 41-42. The parties disputed whether, under the CBA's seniority and layoff procedures, an employee who loses shifts but still retains at least 60% of his or her regular schedule should be able to work other open shifts that would otherwise be "extra board" shifts for temporary and part-time employees. The Union proposed this 60%

rule "to promote seniority and to avoid bumping under the Stardust procedure." *Id.* at 16.  The CBA article on seniority requires the layoff procedure from the Stardust arbitration award, and the Employer argued that in order to comply with Section 9.03 and "avoid creating exceptions to" the Stardust award, the ordinary "bumping procedures" from that award must be applied. ECF No. 17 at 3.  The Employer also "urge[d] that it has a management right to schedule employees." ECF No. 17-2 at 16.

The arbitrator sustained the Union's grievance and decided that employees who retain at least 60% of their schedule after a shift reduction "should be given an opportunity to retain the balance of their schedule by picking up open time that otherwise would be available for extra board employees." ECF No. 17-2 at 15, 20.  The Employer moves to vacate the arbitration award, arguing that it does not draw its essence from the CBA and that the arbitrator exceeded his authority and dispensed his own brand of industrial justice.  The Union moves for summary judgment to confirm and enforce the award.  Because the arbitrator construed the CBA and did not dispense his own brand of industrial justice, I grant the Union's motion for summary judgment and deny the Employer's motion to vacate the arbitration award.

# I.  ANALYSIS

"[T]he appropriate question for a court to ask when determining whether to enforce a labor arbitration award interpreting a collective bargaining agreement is a simple binary one: Did the arbitrator look at and construe the contract, or did he not?" *Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 532 (9th Cir. 2016).  I must uphold the award "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).  Even if I "were convinced that the arbitrator misread the contract or

erred in interpreting it," I must uphold the award. *Va. Mason Hosp. v. Wash. State Nurses Ass'n*, 511 F.3d 908, 913-14 (9th Cir. 2007).  Vacatur is justified in four limited circumstances:

> (1) when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud.

*Drywall Dynamics*, 823 F.3d at 530.

### A.  The Arbitrator Construed the CBA

The Employer argues that the award does not draw its essence from the CBA.  First, the Employer contends that the arbitrator purported to fill a non-existent gap in the CBA by establishing a reasonableness standard for applying Section 9.03(c)(6).  Next, it argues that the award is inconsistent with the CBA's guaranteed work provisions and the parties' established practice.  The Union responds that the arbitrator plausibly interpreted the CBA, so the award draws from its essence.

The arbitrator "observed that there is a gap in language of the [CBA] on the exact question presented in this case." *Id.* at 17.  The arbitrator then stated that "[c]ontract language points to an appropriate answer" and he construed the CBA, noting that "[e]stablishing a reasonableness standard . . . is consistent with other provisions of the labor agreement." *Id.* at 17-18.  He reasoned that the catchall provision, Section 9.03(c)(6), "does not compel agreement by any of the parties mentioned" but still "does not provide unfettered discretion for the Company to act arbitrarily or without reason to reject a sensible, workable solution when supported by a Union waiver of a potential grievance." *Id.* at 17-18.  The arbitrator noted that "[u]se of the word 'mutually' weighs against the Company's more rigid interpretation, and implies a need to engage with others." *Id.* at 18.  The arbitrator also found that a reasonableness standard is consistent with

provisions of Section 20.03, which contains the layoff procedure. *Id.* at 18-19.  The arbitrator's interpretation of various contract provisions shows the award draws its essence from the CBA.

The Employer argues that the award is contrary to the CBA because the award implicitly acknowledges that the award's procedure is inconsistent with Section 9.03.  The Employer points to the arbitrator's statement that the award's procedure will apply only when the Union waives a potential grievance related to Bally's violating the CBA's guaranteed work provisions. ECF Nos. 17 at 20; 17-2 at 17-18.  However, the Employer's belief that its interpretation of the CBA is superior to the arbitrator's is not a basis to vacate the award. *See Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1207 (9th Cir. 1989) (stating that "courts are not competent to second-guess an arbitrator's judgment").  The same applies to the Employer's argument that the arbitrator dispensed his own brand of industrial justice by altering the parties' long-standing practice and finding a gap in the CBA, contrary to the Employer's belief that there is no gap because Section 9.03(c)(6) is a catchall provision.  The arbitrator construed the CBA in concluding that there was a gap on this specific question and in reaching his decision on how to fill that gap.  Vacatur of the award is therefore not justified.

**B.  The Employer's Remaining Arguments**

The Employer's remaining arguments fail for the same reason.  First, the Employer contends that the arbitrator dispensed his own brand of industrial justice by noting an "equitable consideration" in his reasoning and thus filling the gap in the CBA "with his notions of equity." ECF No. 17 at 19.  But the arbitrator merely noted "[a]s a related equitable consideration" that under the Employer's proposed application of the CBA, "a less senior employee who has been laid off" could "potentially secure more lucrative assignments . . . than the affected employee

placed on a new schedule, even if that more senior employee would be willing to work open shifts." ECF No. 17-2 at 19.  The fact that the arbitrator bolstered his analysis with this "related equitable consideration" does not support the conclusion that he dispensed his own brand of industrial justice.  And the CBA contains seniority requirements, some of which the arbitrator cited. ECF Nos. 18 at 10; 17-2 at 84 ("ARTICLE 20: SENIORITY").

Similarly, the arbitrator's reference to MGM hotels' use of the Union's proposal does not indicate that he "was pre-determined to force Bally's to accept a similar settlement proposal." ECF No. 17 at 19.  In describing the facts of the case, the arbitrator only stated that "[t]he Union recalled that this option had been used several times in the past, and is applied at MGM hotels, another Las Vegas hotel group." ECF No. 17-2 at 14.  There is no indication that MGM's practice was the basis of the decision instead of the arbitrator's construction of the CBA.

Lastly, the Employer argues that the arbitrator "rewrote" the CBA by requiring Bally's to treat Local 165 differently than it treats Culinary Workers Union Local 226, even though both locals are parties to the same CBA. ECF No. 17 at 17.  However, the arbitrator noted that "no ruling is made as to how the [CBA] should apply to classifications represented by the Culinary Workers Union," which was not a party to the arbitration. ECF No. 17-2 at 20.  The Employer has not indicated how the arbitrator's refusal to bind a non-party to the arbitration means that he did not construe the CBA or that he rewrote it.

## II. CONCLUSION

I THEREFORE ORDER that plaintiff Bally's Las Vegas Manager, LLC's petition and motion to vacate the arbitration award **(ECF Nos. 1 and 17) are DENIED**.

I FURTHER ORDER that the motion for summary judgment by defendants Local Joint Executive Board of Las Vegas and Bartenders Union, Local No. 165 **(ECF No. 21) is GRANTED**.

I FURTHER ORDER the clerk of court to enter judgment in favor of the defendants and against the plaintiff.

DATED this 1st day of December, 2020.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE